■ SPECIALTY RESTAURANTS CORPORATION, Appellant, v MICHAEL BARRY, Respondent. [692 NYS2d 512] —Mikoll, J. P. Appeal from an order of the Supreme Court (Conway, J.H.O.), entered April 8, 1998 in Rensselaer County, upon a dismissal of the complaint at the close of the evidence.

In April 1991, plaintiff and a corporation known as R.C.C., Inc. entered into an agreement whereby R.C.C. would lease and operate the Castaway Restaurant in the City of Troy, Rensselaer County.* Defendant, the sole principal of R.C.C., personally guaranteed payment of its obligations under the lease. The lease provided for a 20-year term, commencing April 3, 1991, "subject to the New York State Liquor Authority granting a liquor license to [R.C.C.]". Desiring that defendant operate the restaurant while R.C.C.'s liquor license application was pending, the parties contemporaneously entered into a "Special Employment Contract" providing that defendant would manage the restaurant on behalf of plaintiff until, *inter alia,* "the closing ·of the transactions contemplated by the Lease Agreement". Although the lease required R.C.C. to fully comply with all laws applicable to its operation of the leased premises, and imposed on both parties the covenants of good faith and fair dealing, defendant failed to take prompt action to secure a liquor license. At plaintiff's urging, he eventually submitted an application to the State Liquor Authority in November 1992, and his license was issued on January 7, 1993.

By December 1993, R.C.C. was in default under the terms of the lease by failing to make rental payments due thereunder in the amount of $156,843. After plaintiff commenced an eviction action in February 1994, R.C.C. filed for relief under

---

* In 1992, the parties executed an amendment to the lease revising terms and conditions not germane to this appeal.

chapter 11 of the Federal Bankruptcy Code. Upon plaintiff's motion for an order compelling R.C.C. to either assume or reject the lease, the Bankruptcy Court extended R.C.C.'s time therefor, and directed that default payments in the amount of $249,726.97 be made a condition of assumption of the lease.

Plaintiff thereafter commenced this action against defendant, based upon his personal guarantee, seeking recovery of $401,205.56 owing under the lease. In his answer, defendant interposed, *inter alia*, the affirmative defense that enforcement of the lease agreement was barred by law and public policy. A jury trial was held and, at the close of evidence, defendant moved to dismiss the complaint on the ground that the lease violated Alcoholic Beverage Control Law § 111. Supreme Court granted defendant's motion, holding that the lease and employment contract were illegal in that they called for defendant to operate the restaurant by availing himself of plaintiff's liquor license. Plaintiff appeals.

We reverse. Alcoholic Beverage Control Law § 111 provides that a liquor license, which "shall be available only to the person therein specified, and only for the premises licensed", is not transferable without the authorization of the State Liquor Authority. The principal purpose of this statute is "to prevent undesirable persons, ineligible to secure a license, from operating a liquor business through another licensee as a 'blind' " (*Matter of Potter v New York State Liq. Auth.*, 37 AD2d 760). Although judicial attention to Alcoholic Beverage Control Law § 111 has most often focused on reviewing enforcement actions (*see, Matter of Dumbarton Oaks Rest. & Bar v New York State Liq. Auth.*, 58 NY2d 89; *Matter of Happy Landing Lounge v State of New York Liq. Auth.*, 219 AD2d 786; *Turgeon of Fla. v Orlando*, 92 AD2d 718; *Matter of Potter v New York State Liq. Auth.*, *supra*), we note that in *Smith v Pope* (72 AD2d 913) the parties' contract for the plaintiff's proprietary operation of the defendant's restaurant, including use of his liquor license, was found to be contrary to public policy and hence void. Significantly, however, the court noted that the contract was not *malum in se*, i.e., unenforceable because the conduct thereunder was by its very nature prohibited, thus precluding relief to either party, but rather was *malum prohibitum*—unenforceable because the conduct thereunder was prohibited by statute—and, following a determination of "the relative culpabilities of the parties", plaintiff was permitted to recover moneys advanced to defendant under the contract (*id.*).

While not fully convinced that, under the facts and circumstances of this case, the lease and employment contract violated

the underlying public policy of the Alcoholic Beverage Control Law, we shall assume that to the extent they contemplated defendant's availing himself of plaintiff's liquor license for any period, however brief, those provisions of the agreements were *malum prohibitum.* It does not necessarily follow, however, that the agreements are unenforceable. "If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy * * * the right to recover will not be denied" (*Rosasco Creameries v Cohen*, 276 NY 274, 278; *see, Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124, 127). Moreover, "forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as a 'sword for personal gain rather than a shield for the public good.' (*Charlebois v Weller Assocs.*, 72 NY2d 587, 595). Allowing parties to avoid their contractual obligation is especially inappropriate where there are regulatory sanctions and statutory penalties in place to redress violations of the law" (*Lloyd Capital Corp. v Pat Henchar, Inc., supra,* at 128).

Application of these principles is particularly compelling here, where defendant's failure to promptly apply for a liquor license, as required by the contract, perpetuated the claimed illegality. Throughout the relevant period, defendant continued to operate the restaurant and derive financial benefits therefrom. Doubts about defendant's good faith and fair dealing were raised by the trial testimony of his former counsel that he reviewed the contracts after their execution and opined to defendant that they were void. Nonetheless, defendant did not communicate this opinion to plaintiff, and was represented by the same counsel during the lease amendment in 1992.

Independent of the foregoing, dismissal of the complaint was improper given that the nature of plaintiff's action was not to enforce the lease agreement against R.C.C. but to enforce defendant's personal guarantee, which was given to induce plaintiff's contract with R.C.C. In this guarantee, defendant agreed to waive any defenses available to R.C.C. under the lease, and acknowledged that it embraced any "indebtedness [of R.C.C.], used in its most comprehensive sense", including any debt or obligation which "may be or hereafter become otherwise unenforceable".

Mercure, Crew III, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the order is reversed, on the law, with costs to abide the event, and matter remitted to the Supreme Court for a new trial.