■ Shaban D. Simaee, Appellant, v Michael M. Levi et al., Respondents. [802 NYS2d 493]—

In an action, inter alia, for a judgment declaring that the plaintiff has a one-third ownership interest in the defendant Ambulatory Surgery Center of Brooklyn, and to recover damages for breach of fiduciary duty, the plaintiff appeals, as limited by his notice of appeal and brief, from so much of an order of the Supreme Court, Kings County (Dabiri, J.), dated March 28, 2003, as granted those branches of the defendants' motion which were to dismiss the second, fourth, eighth, ninth, thirteenth, fourteenth, and eighteenth causes of action in the second amended complaint, and denied those branches of his cross motion which were for partial summary judgment on the fourth, ninth, tenth, eleventh, and fifteenth causes of action in the second amended complaint.

Ordered that the order is modified, on the law, by deleting the provision thereof granting those branches of the defendants' motion which were to dismiss the second, fourth, ninth, and eighteenth causes of action in the second amended complaint, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The plaintiff, Dr. Shaban D. Simaee, and the defendant Dr. Michael M. Levi began practicing medicine together in 1980. About 10 years later, on October 26, 1990, the two doctors

formalized their relationship by entering into a written partnership agreement. On the same day, the plaintiff, Levi, and the defendant Terry Lazar also entered into an option agreement which is at issue in this litigation. The option agreement stated that the parties were contemplating forming a new entity for the purpose of acquiring "the assets, business and goodwill" of the OB/GYN Pavilion (hereinafter the Pavilion), an ambulatory surgery center which Levi had been separately operating as a sole proprietorship. Under the terms of the option agreement, a new ambulatory surgical facility was to be constructed on property owned by the parties. The option agreement further provided that the new facility would be leased to the Pavilion, which would then change its name to the "Ambulatory Surgical Center of Brooklyn" (hereinafter ASC). Moreover, after the commencement of the lease, both the plaintiff and Lazar would have an opportunity to purchase a one-third ownership interest in ASC. The option agreement specified that this proposed sale would be subject to "the prior approval from the Public Health Council for the transfer of the Operating Certificate" to the newly formed entity.

The Pavilion entered into the lease and moved into the new facility in June 1993. Levi then changed the Pavilion's name to ASC. Several years later, he obtained an operating certificate authorizing ASC, as a sole proprietorship, to operate the surgical center. Levi subsequently converted ASC from a sole proprietorship to a limited liability company, and obtained an amended operating certificate reflecting this change.

The plaintiff alleged that after the opening of the new surgical facility, he exercised his right to purchase a one-third ownership interest in ASC, and paid a substantial portion of the $400,000 purchase price in installments. He also claimed that ASC was operated as if he, Lazar, and Levi were all one-third owners of the company. However, it is undisputed that Levi never sought or obtained approval from the Public Health Council to transfer ownership interests in ASC to the plaintiff and Lazar as required by Public Health Law § 2801-a (4) (b) (i).

In June 2001 ASC suspended the plaintiff's privileges due to his alleged unprofessional conduct and erratic behavior. The plaintiff claims, however, that these accusations of misconduct were false, and were motivated by Levi's desire to deprive him of his ownership interest in ASC. About four months after his suspension, the plaintiff commenced this action against, among others, Levi, Lazar and ASC. In a second amended complaint dated December 17, 2001, the plaintiff sought, among other things, a judgment declaring that he has a one-third equitable

ownership interest in ASC. The plaintiff additionally sought, inter alia, damages for breach of fiduciary duty, intentional infliction of economic harm, tortious interference with prospective economic advantage, and tortious interference with physician-patient relationships. The defendants thereafter moved to dismiss the second amended complaint, primarily contending that the Supreme Court lacked authority to declare that the plaintiff had an equitable ownership in ASC without the approval of the Public Health Council of a transfer in ownership, which has never been obtained. The Supreme Court agreed that the purported transfer to the plaintiff of a one-third interest in ASC could not be deemed effective without the approval of the Public Health Council, and thus dismissed the ninth cause of action for a declaratory judgment, and the second, fourth, and eighteenth causes of action, which were also premised on the plaintiff's alleged ownership interest in ASC. The Supreme Court, among other things, also dismissed the plaintiff's claims to recover damages for intentional infliction of economic harm, tortious interference with prospective economic advantage, tortious interference with physician-patient relationships, and conversion. The Supreme Court also denied those branches of the plaintiff's cross motion which were for partial summary judgment on the fourth, ninth, tenth, eleventh, and fifteenth causes of action in the second amended complaint.

On appeal, the plaintiff contends that the Supreme Court erred in concluding that Levi's failure to obtain the Public Health Council's approval to transfer a one-third ownership interest in ASC to the plaintiff renders the alleged transfer ineffective as a matter of law. We agree. The ambulatory surgical center operated by ASC falls within the broad statutory definition of "hospital" (Public Health Law § 2801 [1]), and thus the company was required to comply with the provisions of article 28 of the Public Health Law. These provisions include Public Health Law § 2801-a (4) (b) (i), which states, in pertinent part, that "[a]ny transfer, assignment or other disposition of ten percent or more of an interest or voting rights in a partnership or limited liability company, which is the operator of a hospital to a new partner or member, shall be approved by the public health council." The failure to comply with the provisions of article 28 subjects the operator of a facility within its purview to the possible revocation or suspension of its operating certificate (see Public Health Law § 2806 [1]). However, Public Health Law § 2801-a (4) (b) (i) does not provide that the failure to obtain the approval of the Public Health Council will render a transfer made without such approval ineffective, and it has been recognized that an ownership interest in an entity which

operates a hospital can be transferred despite the fact that such transfer may subject the facility to the loss or suspension of its operating license (*see People v Glessing*, 206 AD2d 786 [1994]; *Long Is. Home v Whalen*, 62 AD2d 23 [1978], *affd* 47 NY2d 767 [1979]).

Moreover, the violation of a statute that is merely malum prohibitum will not necessarily render a contract illegal and unenforceable (*see Benjamin v Koeppel*, 85 NY2d 549, 553 [1995]; *Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124, 127 [1992]; *R.A.C. Group, Inc. v Board of Educ. of City of N.Y.*, 21 AD3d 243 [2005]). Rather, "[i]f the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy . . . the right to recover will not be denied" (*Rosasco Creameries, Inc. v Cohen*, 276 NY 274, 278 [1937]). Furthermore, "forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as 'a sword for personal gain rather than a shield for the public good' . . . Allowing parties to avoid their contractual obligation is especially inappropriate where there are regulatory sanctions and statutory penalties in place to redress violations of the law" (*Lloyd Capital Corp. v Pat Henchar, Inc.*, *supra* at 128, quoting *Charlebois v Weller Assoc.*, 72 NY2d 587, 595 [1988]).

Here, the conduct proscribed by Public Health Law § 2801-a (4) (b) (i) is not illegal, the statute does not expressly provide that its violation will deprive parties to a contract of their right to sue for enforcement, and regulatory sanctions are in place in the event that a violation occurs. Under these circumstances, we conclude that the defendants may not raise the statute as a bar to performance of their contractual obligations (*see Specialty Rests. Corp. v Barry*, 262 AD2d 926, 928 [1999]). We note that while the option agreement itself provided that the sale would be subject to the prior approval of the Public Health Council for the transfer of the operating certificate, the record reveals an issue of fact as to whether the parties waived this requirement by their conduct. Accordingly, those branches of the defendants' motion which were to dismiss the second, fourth, ninth, and eighteenth causes of action in the second amended complaint should have been denied.

However, the Supreme Court properly dismissed the eighth cause of action to recover damages for the intentional infliction of economic harm. In order to state a cause of action for the intentional infliction of economic harm, which is actionable as prima facie tort (*see Curiano v Suozzi*, 63 NY2d 113 [1984];

*Novak v Rubin*, 129 AD2d 780 [1987]), the plaintiff must allege that the complained-of conduct by the defendants was motivated solely by malice, i.e., "disinterested malevolence" (*Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 333 [1983]; *see Curiano v Suozzi, supra; Lynch v McQueen*, 309 AD2d 790, 792 [2003]). Since the plaintiff did not allege facts indicating that the defendants' actions were motivated by disinterested malevolence, this cause of action must fail (*see Lynch v McQueen, supra; Morrell v Gorenkoff*, 278 AD2d 210 [2000]; *EECP Ctrs. of Am. v Vasomedical, Inc.*, 265 AD2d 372 [1999]). The plaintiff's thirteenth cause of action to recover damages for tortious interference with prospective economic advantage was also properly dismissed, since such a claim similarly requires proof that the defendants acted solely for the purpose of injuring the plaintiff (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969 [1986]; *Mandelblatt v Devon Stores*, 132 AD2d 162, 168-169 [1987]).

The plaintiff's fourteenth cause of action, alleging tortious interference with physician-patient relationships, was also correctly dismissed. Although the plaintiff claimed that he had ownership interests in ASC, as well as in the partnership he formed with Levi and the professional corporation through which they practiced medicine, he did not allege that he had an independent contractual relationship with the patients of these entities which would give rise to a pecuniary interest in these relationships (*see Bronx-Lebanon Hosp. Ctr. v Wiznia*, 284 AD2d 265 [2001]).

Finally, the Supreme Court properly denied the plaintiff's cross motion for partial summary judgment, since the record discloses numerous triable issues of fact, including whether Levi breached his obligations under the option agreement, when the plaintiff's breach of contract claim accrued, and whether ASC breached its bylaws in the course of suspending the plaintiff from practice. H. Miller, J.P., Cozier, Krausman and Spolzino, JJ., concur.