GOVERNMENT EMPLOYEES INSUR-ANCE CO., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co., Plaintiffs,

v.

UPTOWN HEALTH CARE MANAGE-MENT, INC. d/b/a New York Neuro and Rehabilitation Center d/b/a East Tremont Medical Center; Hisham El-zanaty; Alan Goldenberg; Hisham Ahmed a/k/a Hisham El Sherbiny; Jadwiga Pawlowski, M.D.; Mlak Hel-my, P.A.; Joanne Taylor, P.A.; Vivian Welton, P.A.; and Joseph Praino, P.A., Defendants.

No. 11–CV–1453 (FB)(RLM).

United States District Court, E.D. New York.

May 16, 2013.

Barry I. Levy, Esq., Rivkin Radler LLP, Uniondale, NY, for Plaintiffs.

Edward K. Blodnick, Esq., Blodnick, Fazio & Associates, P.C., Garden City, NY, for Defendants.

Kenneth C. Henry, Jr., Esq., Kenneth C. Henry, Jr., P.C., Westbury, NY, for Defendant, Pawlowski.

## MEMORANDUM AND ORDER

BLOCK, Senior District Judge.

Plaintiffs are Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO"). Defendants are Uptown Health Care Management, Inc. d/b/a New York Neuro and Rehabilitation Center d/b/a East Tremont Medical Center ("East Tremont"); Hisham Elzanaty; Alan Goldenberg; Dr. Hisham Ahmed a/k/a Hisham El Sherbiny ("Ahmed"); Dr. Jadwiga Pawlowski; physician assistant ("P.A.") Mlak Helmy; P.A. Joanne Taylor; P.A. Vivian Welton; and P.A. Joseph Praino.

GEICO alleges that from January 1, 2008 through at least January 31, 2011, Elzanaty, Goldenberg, and Ahmed billed GEICO for millions of dollars of services rendered by East Tremont to GEICO's insureds, despite the fact that East Tremont was not eligible for reimbursement under New York's no-fault insurance laws. Am. Compl. ¶ 37. GEICO alleges that East Tremont has been ineligible because it has operated without a legitimate medical director, violated its operating certificate, and paid kickbacks for referrals. *Id.* ¶ 2. The complaint raises six causes of action: (1) declaratory judgment against East Tremont; (2) Racketeer Influenced and Corrupt Organizations Act ("RICO") violation under 18 U.S.C. § 1962(c) against Elzanaty, Goldenberg, Ahmed, and Pawlowski; (3) RICO violation under 18 U.S.C.

§ 1962(d) against all defendants except East Tremont[1]; (4) common law fraud against East Tremont, Elzanaty, Goldenberg, Ahmed, and Pawlowski; (5) aiding and abetting fraud against Helmy, Taylor, Welton, and Praino; and (6) unjust enrichment against all defendants. GEICO seeks monetary damages and a declaration that East Tremont has no right to payment for pending no-fault claims submitted to GEICO for services on or after January 1, 2008.

Defendants jointly move to dismiss under Rule 12(b)(1) for *Burford* abstention and under Rule 12(b)(6) for failure to state a claim. They argue that GEICO seeks to have the Court "invalidate" the license issued by the New York State Department of Health ("DOH"), disregard the DOH's oversight, and interfere with the DOH's administrative role. Allstate Insurance Company ("Allstate") has filed an *amicus* brief in support of GEICO. For the reasons set forth in the substantially similar case of *Allstate Ins. v. Elzanaty*, 916 F.Supp.2d 273 (E.D.N.Y.2013) (hereinafter, the "*Allstate* action"), and as expressed below, defendants' motions are denied.

## I.

### A. Regulatory Background

Article 28 of the New York Public Health Law and its corresponding regulations govern the formation and operation of hospitals, referred to as "Article 28 facilities."[2] *See generally* N.Y. Pub. Health Law § 2800 *et seq.* The DOH "issues operating certificates specifying the kinds of services the facilities are authorized to provide." *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F.Supp.2d 399, 403 (S.D.N.Y.2000). A party seeking to establish or expand a hospital must first apply for a certificate of need from the Public Health Council ("PHC") to determine the public need, financial feasibility, and applicant's competence. *See* N.Y. Pub. Health Law § 2801–a(2); *Arnot–Ogden Mem. Hosp. v. Guthrie Clinic*, 122 A.D.2d 413, 505 N.Y.S.2d 232, 233 (1986). The PHC forwards the certificate and supporting documents to the State Hospital Review and Planning Council and the local health systems agency, which provide recommendations. *See Spitzer*, 94 F.Supp.2d at 403.[3] The DOH will not issue an operating certificate "unless it finds that the premises, equipment, personnel, rules and by-laws, standards of medical care, and hospital service are fit and adequate and that the hospital will be operated in the manner required" by Article 28 and its rules and regulations. N.Y. Pub. Health Law § 2805(2)(b). The commissioner may review these determinations at the applicant's request. 10 N.Y.C.R.R. § 401.4. Failure to comply with the provisions of Article 28 can result in revocation or suspension of the operating certificate by the commissioner. N.Y. Pub. Health Law § 2806.

New York does not permit non-physicians to employ physicians or control their practices, and thus all professional corporations that are licensed to practice medicine must be owned and controlled solely by licensed physicians. *See* N.Y. Bus. Corp. Law §§ 1507–1508. However, non-

---

1. Section 1962(c) covers substantive RICO violations, whereas § 1962(d) covers conspiracies to commit substantive RICO violations.

2. Ambulatory surgical centers like East Tremont fall under the statutory definition of hospital. *See* N.Y. Pub. Health Law § 2801(1); *Simaee v. Levi*, 22 A.D.3d 559, 802 N.Y.S.2d 493, 496 (2005).

3. The PHC and the State Hospital Review and Planning Council merged in 2010. *See* N.Y. Pub. Health Law § 225.

physicians may own or control an Article 28 facility provided that a New York-licensed physician serves as medical director and supervises patient care. 10 N.Y.C.R.R. § 751.4. Article 28 facilities also may not pay for referrals. *See* N.Y. Pub. Health Law § 2811.

Under New York's no-fault insurance scheme, injured parties may recover up to $50,000 from insurers for necessary expenses (including medical expenses) arising from the use of a covered motor vehicle. *See* N.Y. Ins. Law § 5102. Rather than seek direct reimbursement from insurers, parties can assign their benefits to medical providers, who then submit claims to insurers and receive payment for services provided. *See* 11 N.Y.C.R.R. § 65–3.11. Significantly, however, a fraudulently incorporated or fraudulently licensed medical provider is not eligible to collect such benefits. 11 N.Y.C.R.R. § 65–3.16(a)(12) ("A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York...."); *State Farm v. Mallela*, 4 N.Y.3d 313, 320, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005) (holding that "a medical corporation that was fraudulently incorporated" by virtue of falsely representing that it was owned and controlled by a licensed physician, is not "entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 *et seq.*, and its implementing regulations, for medical services rendered by licensed medical practitioners"). Providers must also include a notice with its bills stating that it is a crime to supply materially false informa-

tion in connection with a claim. *See* N.Y. Ins. Law § 403(d).

The New York Court of Appeals has recognized that no-fault fraud is rampant in the state. *See Medical Soc'y of N.Y. v. Serio*, 100 N.Y.2d 854, 861, 768 N.Y.S.2d 423, 800 N.E.2d 728 (2003) (noting that "no-fault fraud rose from 489 cases in 1992 to 9,191 in 2000, a rise of more than 1700%" and that "the combined effect of no-fault insurance fraud has been an increase of over $100 per year in annual insurance premium costs for the average New York motorist"); *see also Perl v. Meher*, 18 N.Y.3d 208, 214, 936 N.Y.S.2d 655, 960 N.E.2d 424 (2011) ("No-fault abuse still abounds today.").

## B. Factual Background [4]

East Tremont operates an Article 28 facility in the Bronx, owned by Elzanaty and run by Goldenberg. Am. Compl. ¶¶ 7–9, 27. GEICO alleges that Elzanaty, Goldenberg and Ahmed (collectively, the "Management Defendants") entered into a secret scheme with Dr. Pawlowski, whereby she agreed to allow them to use her medical license, to falsely designate her as the medical director, and to falsely represent that she performed the duties of the medical director. *Id.* ¶¶ 37–45. GEICO alleges that Dr. Pawlowski never served as the medical director, never had any input into patient care, never treated patients there, and only visited to pick up her paychecks. *Id.* ¶¶ 40–41. GEICO alleges that Ahmed, who was licensed to practice medicine only in Egypt, was labeled the "facilities administrator" but actually served as the medical director. *Id.* ¶ 10. GEICO further alleges that Dr. Pawlowski had previously served

---

4. When deciding a motion to dismiss pursuant to Rule 12(b)(1) or 12(b)(6), the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Vietnam Ass'n for*

*Victims of Agent Orange v. Dow Chemical Co.*, 517 F.3d 104, 115 (2d Cir.2008) (Rule 12(b)(6)); *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir.2006) (Rule 12(b)(1)).

as a front in Elzanaty's unlawful schemes and was charged in January 2011 with professional misconduct for permitting Elzanaty to control several medical professional corporations that had been incorporated using her medical license. *Id.* ¶ 11. To resolve these charges, Dr. Pawlowski agreed not to contest them, to accept certain limitations on her medical license, to pay a fine, and to sever any professional relationships with East Tremont. *Id.* She ended her relationship with defendants on January 31, 2011. *Id.* ¶ 45.

GEICO alleges that to obtain permission to operate from the DOH the Management Defendants and East Tremont falsely represented that East Tremont would serve the local community in the south Bronx and upper Manhattan, and that nearly 90% of its revenue would come from patients insured by Medicare, Medicaid, and Workers' Compensation. *Id.* ¶¶ 46–49. GEICO contends that East Tremont has instead primarily served no-fault patients, received more than 90% of its revenue through no-fault benefits, and routinely given preferential access to no-fault patients. *Id.* ¶ 50. East Tremont allegedly obtains no-fault insureds from clinics and chiropractic offices across the metropolitan area. *Id.* ¶¶ 51, 53. GEICO alleges that East Tremont and the Management Defendants paid the clinics monthly "rent" of $2,000 to $4,000 as kickbacks. *Id.* ¶ 54.

The Management Defendants and East Tremont sent Helmy, Taylor, Welton, and Praino to the clinics to ensure that no-fault insureds were referred to East Tremont for further treatment and implemented a "trolling" system, whereby East Tremont's physicians and physician assistants would examine the no-fault insureds at the clinics and then refer them to East Tremont for services. *Id.* ¶¶ 55–59. To conceal these violations of the site-specific license, East Tremont and the Management Defendants omitted or disguised references to the clinics on the examination reports and corresponding bills, and submitted these documents in the names of the physicians or their professional corporations. *Id.* ¶ 59.

Accordingly, GEICO alleges that defendants misrepresented in each bill that East Tremont was lawfully licensed and thus eligible to receive no-fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65–3.16(a)(12), when it actually operated without a legitimate medical director, paid kickbacks for most of its referrals, and generated most its no-fault billing through violations of its operating certificate. *Id.* ¶ 62.

On November 18, 2008, the DOH began a re-certification survey for East Tremont. On December 31, the DOH issued a statement of deficiencies, and East Tremont responded with a plan of corrections. *See* Elzanaty Aff., Ex. 2(e). On February 4, 2009, the DOH found the plan to be acceptable. *See* Elzanaty Aff., Ex. 2(I). East Tremont states that it has also maintained accreditation from the Accreditation Association for Ambulatory Healthcare. *See* Elzanaty Aff., Ex. 6. Defendants contend that the cumulative effect of these inspections, reviews, and re-certifications demonstrate the DOH's thoroughly considered determination that East Tremont is licensed and continues to comply with its certificate.

## II.

Briefly, defendants contend under Rule 12(b)(1) that the Court should abstain based on the *Burford* doctrine because GEICO's claims essentially require the Court to find that East Tremont is improperly licensed and thus ineligible for reimbursement, which would effectively overrule the DOH. Defendants argue under Rule 12(b)(6) that the allegations of fraud fail to state a claim since the DOH

has repeatedly reviewed East Tremont and continued its certificate of authority. They further argue that GEICO's challenges to East Tremont's licensing must be raised with the Commissioner of Health and in Article 78 proceedings.

These issues were also raised in the *Allstate* action, where Judge Spatt denied defendants' 12(b)(1) and 12(b)(6) motions to dismiss. As explained below, the *Allstate* action is similar in all material respects to the present case, and Judge Spatt's well-reasoned decision applies here as well.

### A. Background of the *Allstate* Action

Allstate sued Elzanaty, Ahmed, Goldenberg, Dr. Pawlowski, East Tremont, and various clinics and medical professional corporations, alleging that Elzanaty conspired with Dr. Pawlowski, their fraudulently incorporated corporations, and East Tremont to defraud Allstate by creating fictitious medical facilities that posed as legitimate ones to obtain no-fault payments. Like the present suit, Allstate alleged that the facilities were not properly licensed by virtue of having an unlicensed medical director (and using Dr. Pawlowski as the sham director), examining patients at off-site locations, and paying kickbacks for referrals. Allstate settled with Pawlowski and the corporations, but the remaining defendants moved for dismissal or abstention. Judge Spatt held, in relevant part, that: (1) *Burford* abstention did not apply; and (2) the RICO claim was sufficiently alleged, was not preempted by New York's no-fault regime, and was not required to be brought in an Article 78 pro-

ceeding. *See Allstate Ins. v. Elzanaty*, 916 F.Supp.2d at 292–93, 297–99.[5]

### B. Denial of Defendants' Motion to Abstain Pursuant to the *Burford* Doctrine

■ Defendants argue that the Court should abstain from exercising jurisdiction pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and its progeny. The Supreme Court has identified two scenarios in which a federal court should abstain under this doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citations and quotation marks omitted); *see also Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir.1998). If a court abstains, it may dismiss the action, remand it to state court if it was commenced there, or stay the action. *See Quackenbush v. Allstate Ins.*, 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

---

5. The *Allstate* action also involved *Colorado River* abstention, collateral estoppel, *res judicata*, *Rooker–Feldman*, and the statute of limitations, which are not raised in this case. Judge Spatt granted defendants' request for an interlocutory appeal pursuant to 28 U.S.C.

§ 1292. *See Allstate v. Elzanaty*, 11–cv–3862 (Apr. 1, 2013). As of the present date, no decision has been rendered as to whether the Second Circuit will accept the appeal.

■ Just as in the *Allstate* action, defendants argue that, without a finding that East Tremont is improperly licensed and thus ineligible for reimbursement under 11 N.Y.C.R.R. § 65–3.16(a)(12), GEICO has no claim for relief. Defendants assert that New York has established comprehensive regulations with respect to the reimbursement of medical providers under the no-fault law and a comprehensive system to manage the licensing, regulation, and oversight of Article 28 facilities. They argue that determining the threshold licensing issue would effectively reverse the DOH's findings, subvert its jurisdiction, and establish a parallel avenue of review in conflict with New York's efforts for uniformity.

■ Judge Spatt rejected this argument:

This case does not challenge the Article 28 regulatory framework or challenge the State's authority with regard to licensing determinations. Rather, this case largely concerns whether the holding of *State Farm v. Mallela,* 4 N.Y.3d 313, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005)—that insurers can bring suit against health care providers alleging that they are not eligible for no fault law reimbursement for unlawful incorporation of a medical corporation—may be extended from the business corporation law context to the public health law context through the vehicle of a federal civil RICO action.... [A]nswering this question would not disrupt the state's purpose in establishing a coherent public policy on a matter involving substantial concern to the public. While it may present a novel issue involving state law, that alone is not a basis for abstention.

*Allstate Ins. v. Elzanaty,* 916 F.Supp.2d at 290–91 (citing *Meredith v. City of Winter*

*Haven,* 320 U.S. 228, 234–35, 64 S.Ct. 7, 88 L.Ed. 9 (1943)). As Judge Spatt noted, instead of abstaining, a district court may try "to predict how a state court would rule," *Salve Regina Coll. v. Russell,* 499 U.S. 225, 241, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), and the Second Circuit "may certify the issue to the State Court of Appeals," *State Farm Mut. Auto. Ins. v. Schepp,* 616 F.Supp.2d 340, 346 (E.D.N.Y. 2008).

In holding that abstention was not warranted, Judge Spatt found two cases to be particularly analogous and persuasive. In both *State Farm Mutual Automobile Insurance Co. v. Schepp,* 616 F.Supp.2d 340, and *State Farm Mutual Automobile Insurance Co. v. Mallela,* 175 F.Supp.2d 401 (E.D.N.Y.2001), State Farm alleged that unlicensed parties paid physicians to falsely represent to licensing authorities that they owned and controlled medical professional corporations.[6] In *Schepp,* this Court found *Burford* abstention inapplicable "because the doctrine prevents federal courts from 'interfer[ing] with the proceedings or orders of state administrative agencies' in certain circumstances, and the present action does not relate to any administrative action undertaken by the State of New York, much less an order or proceeding of a state agency." 616 F.Supp.2d at 346 (emphasis and citation omitted). In *Mallela,* the court also found abstention inappropriate, stating:

Adjudication of plaintiff's claims will not unduly disrupt New York's regulatory scheme. If plaintiff succeeds, the PC Defendants will not be able to provide medical services and bill plaintiff for those services; if plaintiff fails, the PC Defendants will likely obtain compensation for services already rendered to plaintiff's insureds.... "[T]he considerations warranting invocation of *Burford*

**6.** Both cases involved claims for fraud, unjust    enrichment, and declaratory relief.

abstention are absent in the case now before the Court," because "[t]his case [will] not involve federal courts in supervising, interrupting, or meddling in state policies by interfering in state regulatory matters."

175 F.Supp.2d at 411 (quoting *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 600 (2d Cir.1988)). This Court agrees with Judge Spatt that "analogous reasoning applies here." *Allstate v. Elzanaty*, 916 F.Supp.2d at 292. Both GEICO and Allstate challenge East Tremont's fraudulent conduct, rather than New York's regulatory scheme.

Finally, Judge Spatt properly noted that "even if the Defendants were correct that abstention was warranted, it would only apply to Allstate's claim for declaratory relief, not damages." *Id.* at 292; *see Quackenbush*, 517 U.S. at 731, 116 S.Ct. 1712 ("[F]ederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary.").

Accordingly, based on the reasons articulated in *Allstate v. Elzanaty*, this Court denies defendants' 12(b)(1) motion to dismiss.[7]

## C. Denial of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

In arguing for dismissal under Rule 12(b)(6), defendants contend (as they did in the *Allstate* action) that plaintiffs have failed to plead a RICO claim because the alleged predicate act of using the mail to obtain fraudulent licensing was actually lawful conduct. Likewise, defendants contend that the other claims based on this conduct must fail. In support, they argue that: (1) a no-fault insurer cannot advance a claim for fraud by alleging that an Article 28 facility failed to comply with licensing requirements when the DOH has confirmed its compliance; and (2) an insurer must raise this claim to the DOH and then in an Article 78 proceeding. This Court is in accord with Judge Spatt's rejection of both arguments.

### 1. Whether GEICO Can Raise a Fraud Claim for Non-compliance with Licensing Requirements

■ Confronting this identical issue in the *Allstate* action, Judge Spatt held that "the Plaintiffs have adequately stated a claim for fraud and RICO on the premise of improper licensing, despite the fact that the Defendants were approved and licensed by a state authority." 916 F.Supp.2d at 294. The Court agrees.

In *State Farm Mutual Automobile Insurance Co. v. Mallela*, 4 N.Y.3d 313, 319, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005), the New York Court of Appeals held, in response to a question certified by the Second Circuit, that insurers may withhold no-fault reimbursement from fraudulently incorporated enterprises. The Court of Appeals emphasized that 11 N.Y.C.R.R. § 65–3.16(a)(12) "excluded from the meaning of 'basic economic loss' payments made to unlicensed or fraudulently licensed providers, thus rendering them ineligible for reimbursement." *Id.* at 320, 794 N.Y.S.2d 700, 827 N.E.2d 758. Significantly, the court also declared that an insurer "may look beyond the face of licensing docu-

---

7. The parties also vigorously dispute which materials the Court may consider. Defendants' exhibits are intended to show that East Tremont is and has always been legitimately licensed. Because these supplemental materials do not demonstrate that this suit will disrupt New York's regulatory scheme, there is no need for the Court to consider these materials or the responsive ones from GEICO. The documents offered by defendants fail to demonstrate that *Burford* abstention is warranted.

ments to identify willful and material failure to abide by state and local law." *Id.* at 321, 794 N.Y.S.2d 700, 827 N.E.2d 758. The court rejected the notion that an insurer's interest in withholding payment for fraud would conflict with the state's interest in ensuring the prompt payment of claims. *See id.*

Judge Spatt viewed the plaintiffs as "impliedly seeking to extend *Mallela* from the business corporation law context to the public health context." *Allstate v. Elzanaty,* 916 F.Supp.2d at 294–96. Rejecting the defendants' argument that *Mallela* applies only to medical professional corporations, Judge Spatt stated:

> *Mallela* made no distinction between health care providers incorporated as business entities pursuant to the business corporation law, and health care providers licensed as Article 28 facilities under the public health law.... What type of licensing document is at issue, whether it is a certificate of authority issued to a professional corporation or an operating license issued to an Article 28 facility, is immaterial. The operative regulation 11 NYCRR § 65–3.16(a)(12) merely states that a provider of healthcare services is not eligible for reimbursement under Insurance Law § 5102 if the provider fails to meet *any* New York State or local licensing requirements. Article 28 was in existence a[t] the time this regulation was promulgat-

ed in 2002, and thus if there was an intent to exclude Article 28 facilities from its scope, such an exclusion would have been included.... The Court agrees with the Plaintiffs that the Defendants wrongly seek to curtail the scope of *Mallela.*

*Allstate v. Elzanaty,* 916 F.Supp.2d at 295–96.[8] Judge Spatt also rejected the defendants' attempt to distinguish *Mallela* based on the differing degrees of state oversight:

> *Mallela* did not depend on the notion that a claim could only be brought because the incorporation by the State was a discrete event. As is the case here, the PCs in that case were subject to an approval process and were required to meet certain regulations. The fact that there may be a higher degree of oversight in the public health context as opposed to the business corporation context does not, in the Court's view, necessitate a different outcome. Certainly, the broad language of 11 NYCRR § 65–3.16(a)(12) contemplates ineligibility if the provider fails to meet *any* New York State or local licensing requirements, not only those requirements subject to a one-time inspection.

*Allstate v. Elzanaty,* 916 F.Supp.2d at 297.[9] Moreover, Judge Spatt noted that "the result urged by the Defendants would be in direct conflict with the New York Court of Appeals advice that insurers may 'look behind the face of licensing docu-

**8.** Further, as Allstate notes in its *amicus* brief in the present case, the Public Health Law recognizes in other contexts that the term "provider" or "health care provider" includes Article 28 facilities. *See* N.Y. Pub. Health Law § 18(b)-(c). Allstate rightly contends that defendants try to apply two different definitions—one that allows them to be "providers" under Insurance Law § 5012(a)(1) but exempts them from § 65–3.16(a)(12). Since 11 N.Y.C.R.R. § 65–3.16(a)(12) specifically adopts the standards under § 5102(a)(1), defendants' construction must fail.

**9.** Judge Spatt recognized that plaintiffs' theory "is not drastically different from the number of other cases that Allstate and other insurance companies have brought after *Mallela.*" *Id.* at 296; *see, e.g., State Farm Mut. Auto. Ins. v. Grafman,* 655 F.Supp.2d 212 (E.D.N.Y.2009) (denying motion to dismiss RICO and fraud claims where medical provider allegedly misrepresented its compliance with licensing requirements).

ments to identify willful and material failure to abide by state and local law.'" *Id.* at 296 (quoting *Mallela,* 4 N.Y.3d at 321, 794 N.Y.S.2d 700, 827 N.E.2d 758). Judge Spatt further reasoned that "[i]t was not intended that an Article 28 facility could hide behind the shield of its operating certificate, despite its alleged misleading of the N.Y. DOH as to its fraudulent conduct" since this would leave insurers without any "effective mechanism to directly challenge the provider's entitlement to receive no-fault reimbursement." *Id.*

Although defendants repeatedly argue here, as they did in the *Allstate* action, that the RICO claims interfere with, and are essentially preempted by, New York's no-fault regime, Judge Spatt dismissed this argument. He stressed that the Supreme Court has recognized that "RICO can be applied ... in harmony with the State's [insurance] regulation," *Humana, Inc. v. Forsyth,* 525 U.S. 299, 303, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999), and he further noted that RICO "supplement[s], rather than disturb[s], New York's insurance regime by providing another vehicle by which to carry forth the substantive policies of the State of New York," *Allstate v. Elzanaty,* 916 F.Supp.2d at 297 (quoting *State Farm Mut. Auto. Ins. v. Grafman,* 655 F.Supp.2d 212, 225 (E.D.N.Y.2009)) (internal quotation marks omitted).[10]

Judge Spatt's analysis fully applies to the present case. Accordingly, this Court concludes that *Mallela* extends to Article 28 facilities and that GEICO may proceed with its fraud and RICO claims notwithstanding the DOH's prior approvals of East Tremont.[11]

## 2. Whether GEICO Must Raise its Claims to the DOH and in an Article 78 action

■ Defendants finally contend that GEICO should raise its licensing challenge with the Commissioner of Health, citing N.Y. Insurance Law § 5108(c), which states that "[e]very insurer shall report to the commissioner of health any patterns of overcharging, excessive treatment or other improper actions by a health provider." Judge Spatt rejected this argument:

[I]f this language were to preclude the type of action brought by an insurer as in this case, this would be in direct conflict with the accepted teachings of *Mallela,* which implicitly held that an insurer can bring an action for fraud based on fraudulent incorporation "to recover payments already made to fraudulently incorporated providers", which is a blatant example of an "improper action."

*Allstate v. Elzanaty,* 916 F.Supp.2d at 297–98 (quoting *Grafman,* 655 F.Supp.2d at 220). Moreover, Judge Spatt noted that defendants did not cite any specific DOH process through which Allstate could challenge the operating certificate, *see id.* at 298–99, nor have they done so here. *Cf., e.g.,* 10 N.Y.C.R.R. § 600.5 (setting forth the grounds upon which the DOH can revoke, limit, or annul approval, but providing no process for a third-party to challenge DOH approval).

---

**10.** Additionally, this Court has previously determined that allegations that medical providers misrepresented their corporate legitimacy in their billing do not constitute challenges to administrative determinations. *See Schepp,* 616 F.Supp.2d at 346.

**11.** As to the RICO injury element, defendants seem to argue that because GEICO has not alleged that the billed-for services were medi-

cally unnecessary or not provided, GEICO has failed to plead damages. GEICO does not need to make such allegations, however. It sufficiently pleads an injury by alleging that East Tremont did not comply with licensing requirements, thus removing any obligation to pay. *See State Farm Mut. Auto. Ins. v. Rabiner,* 749 F.Supp.2d 94, 102–03 (E.D.N.Y.2010) (rejecting this argument).

Defendants further assert that plaintiffs' sole remedy for challenging the DOH's determination is an Article 78 proceeding in New York state court.[12] Judge Spatt disagreed: "Allstate is not challenging the N.Y. DOH's administrative decision to issue licenses to Uptown, which would possibly need to be resolved through an Article 78 proceeding. Rather, Allstate is challenging the Defendants' alleged fraudulent conduct, which would render them ineligible under the no-fault regulations to receive no-fault reimbursement." *Allstate v. Elzanaty,* 916 F.Supp.2d at 298. He also expressed concern as to whether Allstate would have standing since "Allstate has been injured by the Defendants' fraudulent billing, not by the DOH's decision to issue an operating certificate." *Id.* Judge Spatt finally observed "any notion that the instant case must be brought as an Article 78 proceeding conflicts once again with the Court of Appeal's holding in *Mallela,* and the large number of federal district courts that have heard similar cases in recent years." *Id.* at 298 (citations omitted).

Defendants raise the same arguments here as they did in the *Allstate* action, and GEICO responds with the same arguments put forth by Allstate. This Court adopts the sound reasoning expressed by Judge Spatt, and concludes that GEICO's claims may proceed.

## CONCLUSION

Defendants' motions to dismiss are denied.

**SO ORDERED.**

---

**12.** An Article 78 action, which can only be brought in a New York Supreme Court, may be used to resolve the question of "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion." N.Y.C.P.L.R. §§ 7803(3), 7804(b).