Matter of Quigley (2019 NY Slip Op 03433)





Matter of Quigley


2019 NY Slip Op 03433


Decided on May 2, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 2, 2019

527414

[*1]In the Matter of the Claim of RYAN HAYWOOD QUIGLEY, Deceased. SUSAN M. HAYES, as Administrator of the Estate of RYAN HAYWOOD QUIGLEY, Deceased, Appellant; RICHARD H. QUIGLEY II, Respondent. ROBERT C. HILLIARD et al., Appellants.

Calendar Date: March 25, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Devine, JJ.


E. Stewart Jones Hacker Murphy LLP, Troy (James E. Hacker of counsel), for Robert C. Hilliard and another, appellants.



MEMORANDUM AND ORDER
Devine, J.
Appeal from that part of an order of the Surrogate's Court of Essex County (Meyer, J.), entered February 7, 2018, which, in a proceeding pursuant to EPTL article 5, among other things, denied petitioner's request for the approval of counsel fees.
Ryan Haywood Quigley (hereinafter decedent) died in a 2011 single-car automobile accident. In 2014, petitioner, decedent's mother, received a recall notice regarding an ignition switch defect in the vehicle involved in the fatal accident. She quickly reached out to two Texas law firms that had entered into a joint venture to pursue and litigate claims related to the ignition switch defect, met with counsel from both (hereinafter litigation counsel), and retained the firms to pursue a claim. The written agreement made clear that petitioner was retaining both firms and that they would receive, among other things, a contingency fee of 33.3% calculated upon the whole of any "gross recovery." Petitioner then procured limited letters of administration for decedent's estate that authorized her to commence a wrongful death action (see EPTL 5-4.1 [1]), but required her to obtain further judicial approval to compromise or collect on it.
The ensuing federal action was consolidated for pretrial proceedings with others related to the ignition switch defect, and one of petitioner's attorneys was named co-lead counsel with responsibility for the personal injury and wrongful death cases. Negotiations led to an aggregate settlement, and petitioner received a substantial settlement offer. Petitioner thereafter sought authorization from Surrogate's Court to, among other things, compromise and settle the wrongful death claim and pay the contingency fee to the firms as contemplated in the 2014 agreement. [*2]Surrogate's Court approved the settlement, but demanded more information on the issue of counsel fees. Following the receipt of that information, Surrogate's Court issued an order determining, as is relevant here, that the contingency fee arrangement was unenforceable. Litigation counsel appeal, arguing that the fee should have been approved.[FN1]
We agree. Surrogate's Court is empowered to "decide what constitutes reasonable legal compensation" for services rendered in prosecuting and compromising a wrongful death action, "regardless of the existence of a retainer agreement or whether all the interested parties have consented to the amount of fees requested" (Matter of Verplanck, 151 AD2d 767, 767 [1989] [internal citation omitted]; see EPTL 5-4.6 [a], [e]; SCPA 2110). A fee arrangement is subjected to "particular scrutiny," with an attorney obliged to demonstrate that the retainer agreement is "fair, reasonable, and fully known and understood by [his or her] clients" (Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 176 [1986]; accord Matter of Lawrence, 24 NY3d 320, 336 [2014]; see Matter of Lanyi, 147 AD2d 644, 647 [1989]). Nevertheless, there is no inherent impropriety in a contingency fee arrangement like the one at issue, and it should be enforced "[a]bsent incompetence, deception or overreaching" (Matter of Lawrence, 24 NY3d at 339; see Matter of Talbot, 134 AD3d 726, 727 [2015]).
Surrogate's Court concluded that the agreed-upon contingency fee was void because litigation counsel had not satisfied the prerequisites for "divid[ing] a fee for legal services with another lawyer who is not associated in the same law firm" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.5 [g]; see Texas Disciplinary Rules of Professional Conduct rule 1.04 [f]). In so doing, Surrogate's Court rejected the opinions of several experts in legal ethics who found no problem under either the New York or Texas rules of professional conduct (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.5 [c], [g]; Texas Disciplinary Rules of Professional Conduct rule 1.04 [c], [f]; see also Samuel v Druckman & Sinel, LLP, 12 NY3d 205, 210 [2009]; Robert P. Lynn Jr., LLC v Purcell, 40 AD3d 729, 730-731 [2007]). Assuming without deciding that there was a violation, however, it was "merely malum prohibitum [and] will not necessarily render a contract illegal and unenforceable" (Benjamin v Koeppel, 85 NY2d 549, 553 [1995]; see Marin v Constitution Realty, LLC, 28 NY3d 666, 672 [2017]; Simaee v Levi, 22 AD3d 559, 562 [2005]). Inasmuch as there is no express provision that a rule violation will render a fee agreement void, such an agreement would remain enforceable if to hold otherwise would be "wholly out of proportion to the requirements of public policy" (Rosasco Creameries, Inc. v Cohen, 276 NY 274, 278 [1937]; see Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124, 127 [1992]).
The legal ethics experts cogently explained that the fee division requirements were intended to ensure that a client understood the financial and legal impacts that could result from his or her attorney involving another attorney in the representation. Those policy concerns are not implicated here, as petitioner signed an unambiguous retainer agreement at the outset that in no "way deceived or misled" her as to the joint representation or the amount of the contingency fee (Samuel v Druckman & Sinel, LLP, 12 NY3d at 210; see Mills v Chauvin, 103 AD3d 1041, 1049 [2013]). She was certainly sophisticated enough to understand those points, having already negotiated for changes in the agreement that included a reduced contingency fee. Moreover, there is no dispute that the firms provided significant and effective legal services that resulted in a favorable outcome. Any violation of the rules was therefore a venial one that had no impact upon a successful representation and, while not dispositive, it is telling that all of the parties to the retainer agreement want it enforced. Under these circumstances, the agreement was not void in its inception and, in the absence of any proof of "incompetence, deception or overreaching," its fee provisions should have been approved (Matter of Lawrence, 24 NY3d at 339).
Egan Jr., J.P., Lynch, Clark and Mulvey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied petitioner's application for approval and payment of the counsel fees provided for in the retainer agreement dated April 3, 2014; application granted; and, as so modified, affirmed.



Footnotes

Footnote 1: Although petitioner is named as an appellant in the notice of appeal along with litigation counsel, she did not file a brief in this appeal.